UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------X
FORIDUZZAMAN SARDER,

                    Petitioner,               11 Civ. 7873 (NRB)
                                                   S1 09 Crim. 948 (NRB)
       - against -

                                        **MEMORANDUM AND ORDER**
UNITED STATES OF AMERICA,

                    Respondent.
---------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

## I. Introduction

    Foriduzzaman Sarder ("petitioner") brings this <u>pro se</u>
petition to vacate, set aside, or correct his sentence pursuant
to 28 U.S.C. § 2255.  On December 2, 2010, petitioner pleaded
guilty before this Court to a superseding information charging
him with three counts related to a residential mortgage fraud
scheme and a credit card and bank account fraud scheme.  On
April 22, 2011, we sentenced petitioner principally to a prison
term of seventy-eight (78) months, well below the applicable
sentencing range under the United States Sentencing Guidelines.
For the reasons stated below, the petition is denied.

## II. Background[1]

### A. The Indictment and Arrest

On October 5, 2009, petitioner was indicted together with eleven co-defendants for offenses relating to a residential mortgage fraud scheme. Opp'n 1. Coordinating the use of the straw identities through which he and his co-defendants perpetrated their scheme, petitioner served as a manager and supervisor of the far-ranging criminal activity charged in the indictment. Opp'n 2; PSR ¶ 59. On October 8, 2009, petitioner was arrested in his residence where pursuant to a search warrant law enforcement agents recovered considerable evidence in the form of false identification documents and financial records of a separate and extensive credit card and bank account fraud scheme. Opp'n 3-4. See Lockard Decl. Ex. F ("Sentencing Tr.") 14:13-17:14 (discussing scheme).

### B. The Plea

On December 2, 2010, petitioner pleaded guilty to a superseding information pursuant to a plea agreement with the Government. See Lockard Decl. Ex. E ("Plea Tr."). The superseding information charged petitioner with three counts:

---

[1] Unless otherwise noted, the facts recited here are drawn from (1) the Petitioner's Memorandum of Law in Support of His Petition ("Br."); (2) the Petitioner's Affidavit ("Pet'r's Aff."); (3) the Government's Memorandum of Law in Opposition to the Petition ("Opp'n"); (4) the Declaration of Michael D. Lockard, Esq. and the exhibits attached thereto ("Lockard Decl."); (5) the Petitioner's Reply to the Government's Memorandum of Law in Opposition to the Petition ("Reply"); and (6) the Presentence Investigation Report prepared by the United States Probation Office, dated April 15, 2011 ("PSR").

(1) conspiracy to commit wire and bank fraud in violation of 18 U.S.C. § 1349; (2) access device fraud in violation of 18 U.S.C. §§ 1029(a)(5) and 2; and (3) aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) and (b).  See Superseding Information at ¶¶ 1-6, United States v. Sarder, S1 09 Cr. 948 (NRB) (S.D.N.Y. Dec. 2, 2010) (ECF No. 106).

The terms governing petitioner's plea were set out in a plea agreement that was dated November 12, 2010 and that petitioner executed on December 2, 2010.  Opp'n 5; Lockard Decl. Ex. D ("Plea Agreement") 1.  Among these terms, the plea agreement set out the maximum statutory penalties for each of the offenses to which petitioner was pleading guilty as well as a calculation of the applicable sentencing range under the United States Sentencing Guidelines.  Plea Agreement 1-4.  In particular, the plea agreement calculated an offense level of twenty nine, arriving at that figure in relevant part due to an addition of eighteen levels pursuant to U.S.S.G. § 2B1.1(b)(1)(J) because the loss from the offense was more than $2,500,000 but not more than $7,000,000 and an addition of three levels pursuant to U.S.S.G. § 3B1.1(b) because petitioner was a manager and supervisor and the criminal activity involved five or more participants and was otherwise extensive.  Id. at 3.  In the absence of any criminal history, petitioner and the Government stipulated to a resulting guidelines range of 111 to

132 months' imprisonment, which reflected the requirement pursuant to 18 U.S.C. § 1028A that a two-year sentence of imprisonment run consecutive to any other term of imprisonment imposed. Id. at 4. Notwithstanding this stipulated guidelines range, the plea agreement also acknowledged that "the sentence to be imposed upon the [petitioner] is determined solely by the Court," that pursuant to petitioner's guilty plea the Court was authorized "to impose any sentence, up to and including the statutory maximum sentence," and that petitioner would have no right to withdraw his guilty plea should the Court impose a sentence outside the stipulated guidelines range. Id. at 5. Further, of salient relevance here, the plea agreement provided that "the defendant will not file a direct appeal[] nor bring a collateral challenge, including but not limited to an application under [28 U.S.C. § 2255] . . . , of any sentence within or below the [stipulated guidelines range]." Id. at 5.

At his plea hearing on December 2, 2010, petitioner utilized the services of a court-appointed interpreter. Though he has resided in Queens, New York for the past seventeen years,[2] petitioner, who is forty-two years old, was born in Bangladesh. PSR ¶¶ 71-72. While petitioner acknowledges that he has a

---

[2] According to petitioner, he originally entered the United States in 1993 on a temporary visa, remaining for approximately two years. PSR ¶ 72. In 1995, it appears that he illegally reentered the United States via Canada. Id. Thereafter, however, he received a green card and eventually became a naturalized citizen on June 17, 2003. Id. at ¶ 72 n. 2.

"rudimentary" command of English, which is not surprising given that he has spent the majority of the past two decades living and working in the United States, Reply ¶ 8, his native language is Bengali.[3]  Br. 9.  Accordingly, on the eight occasions that petitioner appeared before this Court or a United States Magistrate Judge in connection with his criminal case, including his plea hearing, he has been provided with a court-appointed Bengali interpreter.[4]  Over the course of these appearances, petitioner has worked with at least three and possibly four such court-appointed Bengali interpreters.[5]  At his plea hearing on December 2, 2010 as well as his sentencing hearing on April 22, 2011, petitioner benefited from the interpretation of Hrishikesh Bhattacharjee.  See Plea Tr. 1; Sentencing Tr. 1.  From the records of the Interpreter's Office for the United States District Court for the Southern District of New York, we have learned that petitioner also benefitted from the interpretation

---

[3] It should be noted that in order to have become a naturalized citizen, see supra note 2, petitioner must have "demonstrate[d] an understanding of the English language, including an ability to read, write, and speak words in ordinary usage in the English language." 8 C.F.R. § 312.1 (2003).

[4] Petitioner initially appeared for his arraignment before United States Magistrate Judge Debra C. Freeman on October 8, 2009. As further discussed below, he appeared for a bail hearing before United States Magistrate Judge Gabriel W. Gorenstein on March 24, 2010. Including his plea hearing and sentencing hearing, petitioner has appeared on a further six occasions before this court: October 21, 2009, December 10, 2009, February 16, 2010, April 13, 2010, December 2, 2010, and April 22, 2011.

[5] On October 21, 2009 and December 10, 2009, Dave Chatterjee provided interpretation. On February 16, 2010 and April 13, 2010, Mohammed Rahman provided interpretation. On March 24, 2010, December 2, 2010, and April 22, 2011, Hrishikesh Bhattacharjee provided interpretation. It is not clear but also immaterial whether at his arraignment on October 8, 2009 petitioner received interpretation from Mohammed Rahman or Monica Misra, a fourth court-appointed Bengali interpreter.

of Mr. Bhattacharjee at a bail hearing before United States
Magistrate Judge Gabriel W. Gorenstein on March 24, 2010 and at
an interview with United States Probation Officer James S.
Mullen on February 25, 2011 conducted in the course of preparing
petitioner's presentence investigation report.

At his plea hearing on December 2, 2010 where he was
represented by retained counsel Roger L. Stavis, Esq.,
petitioner was sworn before we initially questioned him through
Mr. Bhattacharjee regarding his intent to waive indictment. In
the course of that questioning, the following colloquy occurred:

> THE COURT: Have you seen a copy of the information,
> that is, the charging document in your case?
> THE DEFENDANT: Yes.
> THE COURT: Has that information been translated to
> you?
> THE DEFENDANT: Mostly I understood it and my daughter
> also helped me.
> MR. STAVIS: Just so that the record is clear, Mr.
> Sarder's daughter, who is present, Ms. Jes[y]
> Cho[w]dhury, works in the state court system as an
> interpreter --
> THE COURT: How convenient.
> MR. STAVIS: -- as a Bengali interpreter, and I also
> reviewed the information in the documents with Mr.
> Sarder, who does speak English, but is using the
> services of the Bengali interpreter.

Plea Tr. 4:12-5:1. Having paused to ascertain the petitioner's
competency to both waive indictment and plead guilty,[6] we

---

[6] After ascertaining petitioner's level of education, see Plea Tr. 5:7-13
("THE COURT: What was the last grade in school that you completed?   THE
DEFENDANT: In my country I passed intermediate.   THE COURT: Is that like high
school?   THE DEFENDANT: High School.   THE COURT: And what is your country?
THE DEFENDANT: Bangladesh."), we proceeded to confirm that he was not
currently or recently under the care of a doctor, psychologist, or

proceeded to question him regarding his intent to plead guilty to the superseding information. Initially, we advised petitioner of the maximum statutory penalties associated with the three counts in the superseding information, particularly conveying that Count Three "requires a mandatory sentence of two years in prison that must run consecutively to any term of imprisonment imposed on the other counts," which petitioner confirmed that he understood. <u>Id.</u> at 6:17-7:17. We continued to confirm that petitioner understood his right to plead not guilty, to a jury trial, to place the burden on the Government to prove the elements of the charged crimes beyond a reasonable doubt, to be represented by counsel at all stages of the proceeding and, if necessary, to have such counsel appointed for him, to confront and cross-examine witnesses against him, to not incriminate himself, to be presumed innocent until proven guilty beyond a reasonable doubt, and to testify and call other witnesses on his behalf. <u>Id.</u> at 6-7, 11-12.

Proceeding to discuss with petitioner his plea agreement, we initially engaged in the following colloquy:

> THE COURT: Mr. Sarder, did you sign a plea agreement earlier today?
> THE DEFENDANT: Yes.

---

psychiatrist, had not been hospitalized for alcohol or narcotics addiction, and was not currently under the influence of alcohol or any drug. <u>See</u> <u>id.</u> at 5:14-22. Petitioner stated that he was physically feeling "good" and further that he had had sufficient time to discuss the information and his guilty plea with Mr. Stavis. <u>See</u> <u>id.</u> at 5:23-6:3.

THE COURT: Before you signed it, did you discuss it
with Mr. Stavis?
THE DEFENDANT: Yes.
THE COURT: Before you signed it, was it translated to
you?
THE DEFENDANT: Yes, my daughter.
THE COURT: Let's put the agreement to one side and let
me just ask you, separate and apart from the plea
agreement, have any threats or promises been made to
you to make you plead guilty?
THE DEFENDANT: No.
THE COURT: Again, separate and apart from the plea
agreement, have any understandings or promises been
made to you concerning the sentence that you will
receive?
THE DEFENDANT: No.
THE COURT: Mr. Sarder, [is your plea] voluntary, in
other words, of your own free will?
THE DEFENDANT: Yes.

Id. at 13:10-14:5. Thereafter, we discussed certain of the

terms of the plea agreement with petitioner, examining in

particular the provisions that stipulated a guidelines range of

111 to 132 months, that acknowledged that the imposed sentence

would be determined solely by the Court, which was not bound by

the stipulated guidelines range, and that stated the petitioner

waived any right to "challenge by an appeal or otherwise" a

sentence imposed within the stipulated sentencing range, all of

which petitioner confirmed that he understood.  Id. at 14:6-

15:5.  Having confirmed that he was pleading guilty because he

was in fact guilty, see id. at 15:16-18, petitioner allocuted to

the charged offenses, reading a prepared statement but also

answering the Court's questions with both "yes" and "no" as well

as substantive answers.  See id. at 17:5-20:8; Reply ¶ 9.  For

8

instance, when asked the duration of his participation in the conspiracy charged in Count I, petitioner answered "2006 to-- 2004 to 2007," and when asked where his activities in the credit card and bank account fraud scheme took place, petitioner answered "[a]ll in New York City." Plea Tr. 18:15-17, 19:23-20:1. Satisfied that petitioner understood the nature of the charges against him and the consequences of his guilty plea and further that that plea was made voluntarily and knowingly and with a factual basis, we accepted it. See id. at 20:15-20.

### C. The Sentencing

On April 22, 2011, we sentenced Sarder to seventy-eight (78) months' imprisonment--fifty-four (54) months on Counts One and Two and twenty-four (24) months on Count Three to run consecutively--five (5) years' supervised release, and forfeiture of $11,000,000.[7] At the sentencing hearing, neither petitioner nor the Government objected to the PSR, which reflected the same calculations under the United States Sentencing Guidelines as the plea agreement between the parties. See PSR ¶¶ 52-70. In addressing the Court on behalf of petitioner, Mr. Stavis conceded that petitioner held a supervisory role in the residential mortgage fraud scheme. See

---

[7] Petitioner executed a Consent Order of Forfeiture on April 22, 2011, which imposed an $11,000,000 money judgment against petitioner for which he was jointly and severally liable with his co-defendants. See Consent Order of Forfeiture, United States v. Sarder, S1 09 Cr. 948 (NRB) (S.D.N.Y. Apr. 26, 2011) (ECF No. 118).

Sentencing Tr. 13:15-14:12. Following Mr. Stavis's presentation, petitioner's eldest daughter, Jesy Chowdhury, spoke on behalf of her father before defendant himself addressed the Court. See id. at 20:5-21:9. Appealing to the Court at some length through Mr. Bhattacharjee and at a number of times expressing himself directly in brief sentences of English, petitioner once again appeared able to effectively communicate with the assistance of the court-appointed interpreter. See id. at 21:13-25:10. Following imposition of his sentence, petitioner did not file a direct appeal.

### D. The Pending Petition

On October 26, 2011, petitioner initiated his pending collateral attack on his sentence, raising what we generously interpret as three sets of claims. First, petitioner asserts that his guilty plea and in particular his waiver of his right to collaterally attack his sentence was not knowing or voluntary "because of a language barrier" between him and Mr. Bhattacharjee, who he now claims for the first time speaks a dialect of Bengali that he does not understand. Br. 9. In particular, petitioner states that he "had no idea that he was waiving his right to a subsequent appeal and/or collateral attack of his sentence." Id. Second, petitioner claims ineffective assistance of counsel, arguing that Mr. Stavis was deficient (i) for failing to "provid[e] an interpreter who could

10

explain the explicit and nuanced aspects of the charges against him" as well as (ii) for failing to challenge Count Three of the superseding information as multiplicitous and (iii) for understating the probable sentence that petitioner would receive as a result of his guilty plea.  Br. 10; 10-12.  <u>Third</u>, petitioner raises what he characterizes as due process violations arising from this Court's determination at sentencing that (i) petitioner was a manager and supervisor pursuant to U.S.S.G. § 3B1.1(b) and (ii) the loss from the offense was more than $2,500,000 but not more than $7,000,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(J).  Br. 13-17.[8]

### III. Discussion

A court is obliged to liberally construe the claims articulated in a <u>pro se</u> habeas petition.  <u>See</u> <u>Parisi v. United States</u>, 529 F.3d 134, 139 (2d Cir. 2008) ("[petitioner] was acting pro se both before the district court and on this appeal, and accordingly we must read his submissions broadly so as to determine whether they raise any colorable legal claims"); <u>Cortez v. United States</u>, No. 09 Civ. 7220 (DAB), 2011 WL 666245, at *3 (S.D.N.Y. Feb. 10, 2011) ("[a]s [p]etitioner is <u>pro se</u>, his petition will be construed liberally").  With that said, a

---

[8] By way of explanation in light of his professed rudimentary command of English, in an affidavit that accompanies his initial submission, petitioner asserts, "I have obtained the assistance of an English-speaking inmate at my place of incarceration to assist me in the preparation of this [a]ffidvait and the pleadings that are associated with it."  Pet'r's Aff. ¶ 3.

habeas petitioner still "bears the burden to prove his allegations by a preponderance of the evidence." Gotti v. United States, 622 F. Supp. 2d 87, 91 (S.D.N.Y. 2009) (citing Whitaker v. Meachum, 123 F.3d 714, 716 (2d Cir. 1997)).

Here, petitioner collaterally attacks a sentence that we imposed following his decision to plead guilty pursuant to a plea agreement in which he waived his right to pursue such a collateral attack.  It is well established that "[k]nowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants." United States v. Granik, 386 F.3d 404, 412 (2d Cir. 2004) (internal quotation marks omitted).  See also United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) (emphasizing "[i]n no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement" before noting "[s]uch a remedy would render the plea bargaining process and the resulting agreement meaningless").  It is similarly well established, however, that "[a]n appeal waiver . . . does have some limits." United States v. Buissereth, 638 F.3d 114, 118 (2d Cir. 2011).  As the Second Circuit has held:

"[A] defendant may have a valid claim that the waiver
of appellate rights is unenforceable . . . when
[1] the waiver was not made knowingly, voluntarily,
and competently, [2] when the sentence was imposed
based on constitutionally impermissible factors, such
as ethnic, racial or other prohibited biases, [3] when
the government breached the plea agreement, or
[4] when the sentencing court failed to enunciate any
rationale for the defendant's sentence, thus amounting
to an abdication of judicial responsibility subject to
mandamus."

Id. (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)) (brackets and ellipsis in original). "These exceptions to the presumption of the enforceability of a waiver, however, occupy a very circumscribed area of our jurisprudence." Gomez-Perez, 215 F.3d at 319 (further observing "we have upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion . . . but yet was still within the range contemplated in the plea agreement").

Of salient relevance here is the requirement that "[t]o be enforceable, guilty pleas and waivers of right to appeal sentence must be knowing and voluntary." United States v. Roque, 421 F.3d 118, 122 (2d Cir. 2005). A plea and waiver "is deemed involuntary, and therefore void, if it is 'the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" Id. (quoting Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988)). "'[A] waiver is only knowing or informed if the defendant fully understood the

consequences of the waiver.'" Id. (quoting United States v. Ready, 82 F.3d 551, 557 (2d Cir. 1996)) (brackets in original).

It is evident from his submissions that petitioner is aware of the obstacle that his plea agreement presents to his collateral attack. Quoting from his plea agreement, he acknowledges that he "agreed that he would not 'bring a collateral challenge.'" Br. 8 (quoting Plea Agreement 5). Nonetheless, petitioner presses among his claims what we liberally construe as two arguments for why his waiver of his right to collaterally attack his sentence was unknowing and thus should not foreclose his petition. Because the issue of whether petitioner's waiver was knowing is dispositive of all of the claims that petitioner raises, we now address his two arguments in turn.

## A. Lost in Translation

In an affidavit that accompanies his initial submission, petitioner articulates the first of these arguments, asserting:

> During the plea hearing in my case, and at other critical times during the progress of the case, I was provided with an interpreter. This was necessary because I am a native of Bangladesh and my knowledge and understanding of English is sorely limited.
> . . .
> At my plea hearing, and at other critical times, the interpreter that was provided for me spoke Sylhety to me as the translation was taking place. Sylhety is a local language of the Sylhet district in Bangladesh and is not my native language. Therefore, I was only able to comprehend a tiny portion of what actually transpired. Because I had never been exposed to the

14

> justice system before and was very intimidated by the
> process, I trusted my lawyer and simply agreed
> whenever he told me to do so. I did not understand
> that Count Three of my charges carried a consecutive
> sentence provision; that I was being characterized as
> a manager or supervisor of a criminal activity; or
> that I was being held responsible for a loss amount
> between $2.5 and $7 million.

Pet'r's Aff. ¶¶ 2, 4. <u>See also</u> Br. 9 (elaborating on the same allegations). In its opposing papers, the Government contends that this "lost in translation" argument is "meritless and flatly contradicted by the record of [petitioner's] plea hearing." Opp'n 15.[9] In his reply papers, petitioner requests "an evidentiary hearing" in order to resolve the "material discrepancies" between his account and that of the Government. Reply 4.

In analyzing petitioner's argument, it is helpful to initially consider the standard that governs whether an evidentiary hearing is required on a petition brought pursuant to 28 U.S.C. § 2255 and that guides the development of the record in such cases. "[T]he language of [§] 2255 . . . requires the district court to hold a hearing '[u]nless the motion and the files and records of the case conclusively show

---

[9] The Government also contends that petitioner's claim that he did not understand the terms of his plea agreement is refuted by his counsel, Mr. Stavis, who related to the Government that he <u>inter alia</u> reviewed the plea agreement with petitioner together with petitioner's eldest daughter, Jesy Chowdhury, prior to the plea hearing. <u>See</u> Lockard Decl. ¶ 9. While this account further buttresses our conclusion as to whether petitioner's waiver was knowing, we find it unnecessary to rely upon it in reaching that conclusion because the defendant himself confirmed the account during his plea allocution.

that the prisoner is entitled to no relief.'" Chang v. United
States, 250 F.3d 79, 85 (2d Cir. 2001) (quoting 28 U.S.C.
§ 2255).   However, "'[t]he language of the statute does not
strip the district courts of all discretion to exercise their
common sense.'"  Id. at 85 (quoting Machibroda v. United States,
368 U.S. 487, 495 (1962)).   Indeed, the precedent of the Second
Circuit "permits a 'middle road' of deciding disputed facts on
the basis of written submissions" and leaves it "within the
district court's discretion to determine whether a hearing is
warranted."  Pham v. United States, 317 F.3d 178, 184 (2d Cir.
2003).   Further, "the district court has wide discretion in
developing the record it will use to determine a habeas
petition."  Id. at 185.  See FED. R. GOVERNING SECTION 2255 PROCEEDINGS
4, 7 (discussing consultation of "the record of prior
proceedings" and expansion of the record through submissions of
the parties).   Ultimately, the district court must exercise its
discretion to conclude whether in light of the amassed record a
hearing would "'offer any reasonable chance of altering its view
of the facts.'"  Chang, 250 F.3d at 86.

        In this case, the written submissions of the parties as
supplemented by the record of the prior proceedings in
petitioner's criminal prosecution convince us both that a
hearing is not necessary and that petitioner's "lost in
translation" argument is without merit.   Aside from petitioner's

self-serving representations as to his inability to understand Mr. Bhattacharjee at his plea hearing, all of the objective evidence from the record belies his claim.  Moving through this evidence in chronological order, we first emphasize that petitioner had benefited from the interpretation of Mr. Bhattacharjee at a bail hearing on March 24, 2010 before Magistrate Judge Gorenstein prior to his plea hearing.  At that bail hearing, Mr. Bhattacharjee was sworn at the commencement of the proceedings.  See Mar. 24, 2010 Hr'g Recording 4:19.  While petitioner does not speak during the course of the bail hearing, Mr. Bhattacharjee's interpretation of the colloquy between the court and counsel, which ran for over thirty-eight minutes, is periodically audible in the background.  See, e.g., id. at 28:25-30:40.  It strains credulity that petitioner previously encountered Mr. Bhattacharjee, learned that he could not understand Mr. Bhattacharjee due to a purportedly significant language barrier, but then raised no protest when he found Mr. Bhattacharjee awaiting him at his plea hearing.

We next note that at his plea hearing, petitioner asserted to us that his eldest daughter, Jesy Chowdhury, had assisted him in understanding both the superseding information and plea agreement.  See Plea Tr. 4:12-5:1; 13:10-18.  Indeed, petitioner stated that Ms. Chowdhury translated the plea agreement to him. See id. at 13:10-18.  This admission in petitioner's sworn

17

statement takes on additional significance in light of Mr. Stavis's uncontested representation in the presence of both petitioner and Ms. Chowdhury at the plea hearing that Ms. Chowdhury was then employed as a Bengali interpreter in the state court system.[10] Petitioner's efforts to minimize the significance of his admission regarding the assistance that his eldest daughter provided to him are frankly lame and also refuted by the record to the extent that he suggests she was not present at his plea hearing. See Reply ¶ 8.

We further agree with the Government that petitioner's participation in the plea hearing colloquy through Mr. Bhattacharjee thoroughly discredits his claim that he was unable to follow the proceeding. See Opp'n 16. Providing substantive as well as "yes" and "no" answers to our questions, it is clear from the transcript of the plea hearing and it was contemporaneously clear to the Court that petitioner was able to effectively communicate with Mr. Bhattacharjee. Quite simply, at the time that we accepted the plea of guilty, we were satisfied that petitioner had knowingly and voluntarily waived his right to attack his sentence under § 2255 or otherwise, and

---

[10] At the bail hearing on March 24, 2010 before Magistrate Judge Gorenstein, Mr. Stavis similarly represented that Ms. Chowdhury was employed as an interpreter in the state court system. See Mar. 24, 2010 Hr'g Recording 29:20. Subsequent to petitioner's plea hearing, it appears that Ms. Chowdhury also worked as a legal assistant at a law firm. See Def.'s Sentencing Mem. Ex. A, United States v. Sarder, S1 09 Cr. 948 (NRB) (S.D.N.Y. Apr. 12, 2011) (ECF No. 117). See also Sentencing Tr. 20:24-25 (reflecting Ms. Chowdhury statement "I'm working at a law office right now full-time").

that he understood the charge to which he was pleading and the terms of his plea agreement. Beyond making that finding at the conclusion of the plea allocution, we also can state for the record that there was no hint of anything discordant in petitioner's answers to our questions or in his demeanor during his plea hearing or his sentencing hearing.

We also consider it significant that on February 25, 2011 petitioner was interviewed in connection with the preparation of his presentence investigation report and again received the interpretative services of Mr. Bhattacharjee. A review of that report reveals that petitioner was able to communicate an extensive level of detail to Probation Officer Mullen during the course of his interview. See, e.g., PSR ¶¶ 71-72, 77-86 (describing petitioner's family history, physical condition, employment history, et cetera). Given that petitioner claims he has "barely enough English to be functionally literate in the language," Br. 9, he can plausibly only have conveyed this information to Probation Officer Mullen with Mr. Bhattacharjee's assistance, rendering incredible his claim that he cannot understand Mr. Bhattacharjee.

Finally, it beggars belief that after three prior encounters with Mr. Bhattacharjee petitioner arrived at his sentencing hearing and did not in any way protest against Mr. Bhattacharjee's assignment. To the contrary, petitioner's

silence for apparently the fourth time on an occasion at which
he was by his own account expecting to be sentenced to at least
several years in prison is among the most persuasive evidence
that he was able to understand Mr. Bhattacharjee perfectly well
at all relevant times.  A defendant cannot of course waive the
requirement that we determine before accepting his plea that he
understands that his plea agreement waives his right to appeal
or to collaterally attack his sentence, a requirement that
Federal Rule of Criminal Procedure 11(b)(1)(N) expressly imposes
on a court.  See FED. R. CRIM. P. 11(b)(1)(N).  However, it
remains the case that petitioner's failure to contemporaneously
raise any objection to Mr. Bhattacharjee prior to bringing this
petition six months after his sentencing hearing--despite
repeated opportunities to do so--powerfully impeaches his
current account of the events.  Cf. United States v. Vargas, 871
F. Supp. 623, 625 (S.D.N.Y. 1994) (rejecting petitioner's
inadequate interpretative assistance claim as waived at trial
and emphasizing "[petitioner] cannot be permitted to sit by
without raising the issue or asking his attorney to do so, and
then claim that his conviction should be vacated because of a
matter which would have been obvious to him and for which a
remedy was readily available if requested" before explaining
"[i]f such a strategy were to be permitted to succeed, there
would be every incentive for one not fluent in English to avoid

20

mention of the language barrier until conviction, and then to raise it for the first time").

Accordingly, we reject petitioner's argument that a language barrier rendered his guilty plea and waiver of his right to collaterally attack his sentence unknowing. We find that petitioner has failed to prove by a preponderance of the evidence that such a language barrier existed. In addition, we find it unnecessary to further expand the record or hold a hearing on this issue because there is no reasonable chance that additional evidence could alter our view of the facts. Significantly, petitioner does not claim that he ever informed his counsel or for that matter anyone else of the purported language barrier. Further, Mr. Bhattacharjee, a court-appointed interpreter who swore to faithfully interpret the proceedings on the initial occasion that he assisted petitioner, never expressed a concern that he was unable to effectively communicate with petitioner. It is thus petitioner's post hoc account alone that we must hold up against the record and which the record overwhelmingly discredits.[11]

---

[11] While we have interpreted petitioner's "lost in translation" argument as directed toward whether his guilty plea and waiver of his right to collaterally attack his sentence were knowing, it is clear that petitioner also intends to assert an ineffective assistance of counsel claim based on the alleged language barrier.   See  Br. 9-10 (asserting "[b]ecause [petitioner's] plea was not knowingly or intelligently entered into, and his defense counsel was responsible for providing an interpreter who could explain the explicit and nuanced aspects of the charges against him, this Court should find that counsel was ineffective and that [petitioner] was thereby prejudiced").   This ineffective assistance of counsel claim, to

## B. "Four to Five Years"

Turning to petitioner's second argument that his waiver was unknowing, in his affidavit, petitioner states, "[a]t various times prior to my execution of the plea agreement, my counsel told me that the maximum sentence I might expect as a result of the pleas was 'four to five years.'"   Pet'r's Aff. ¶ 5. Building on this foundation for what he characterizes as an ineffective assistance of counsel claim, petitioner asserts that he "never understood that Count [T]hree carried a two year consecutive sentence because his attorney failed to provide a candid and/or correct estimate of the likely outcome" and that "[h]ad [he] been aware of his exposure . . . he would not have pled guilty and elected to go to trial."   Br. 12.

In order "[t]o raise a[n ineffective assistance of counsel] claim despite a[n] . . . appeal waiver, [a] petitioner must show that [his] plea agreement was not knowing and voluntary . . . because the advice he received from counsel was not within acceptable standards."   <u>Parisi v. United States</u>, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks omitted).   <u>See also</u> <u>Nunez v. United States</u>, No. 10 Civ. 2460 (DLC), 2010 WL 3023986,

---

whatever extent it is even cognizable, fails because we have found that petitioner has failed to demonstrate that a language barrier existed. Further, as stated above, we note that petitioner does not claim that he informed Mr. Stavis of the purported language barrier, making it rather bizarre (and unfair) for him to attempt to hold Mr. Stavis responsible for that language barrier.   Finally, we note that it is the (statutory) obligation of the court, not counsel, to provide a <u>court</u>-appointed interpreter at proceedings for a defendant in petitioner's position.   <u>See</u> 28 U.S.C. § 1827(d)(1).

at *2 (S.D.N.Y. Aug. 2, 2010) ("[a] defendant who executes a waiver may sign away the right to appeal, but he . . . does not sign away the right to the effective assistance of counsel") (internal quotation marks omitted). However, "a district court [is] entitled to rely upon [a] defendant's sworn statements, made in open court with the assistance of a translator, that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving his right to appeal a sentence below [an agreed-upon term], and had been made no promises except those contained in the plea agreement." United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001). See also Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("the representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings").

Here, petitioner's claim that Mr. Stavis promised him a sentence of "four to five years" is categorically refuted by petitioner's statement at his plea hearing that separate and apart from his plea agreement no promises had been made to him concerning the sentence that he would receive. See Plea Tr. 13:24-14:1. To borrow from the language of the Second Circuit, "[petitioner]'s claim about being misled by his attorney is

23

belied by his own statement, on the record during the plea colloquy, that he had received no 'promises as to a definite or specified period of imprisonment.'" <u>Johnson v. Fogg</u>, 653 F.2d 750, 753 (2d Cir. 1981).

However, even were we to credit petitioner's allegation as to what Mr. Stavis promised him and further grant that his claim satisfies the performance prong under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), his claim still fails because he cannot establish prejudice. Whatever misconceptions he may have entertained prior to his plea hearing, we impressed on petitioner at his plea hearing <u>inter alia</u> that we alone determined his sentence, that in particular Count Three mandated a two-year consecutive sentence, and that he was waiving his right to challenge any sentence within the stipulated sentencing range of 111 to 132 months' imprisonment, let alone a sentence below that range. <u>See</u> <u>Brama v. United States</u>, No. 08 Civ. 1931 (RMB), 2010 WL 1253644, at *3 (S.D.N.Y. Mar. 16, 2010) (rejecting § 2255 petitioner's argument that his counsel misinformed him regarding his expected sentence and stating "[p]etitioner's claim fails because he plead[ed] guilty while being aware of the potential maximum prison term and knowing that the sentence to be imposed was within the court's discretion and, therefore, cannot show that he suffered prejudice as a result of his counsel's alleged advice"); <u>Daija</u>

v. United States, No. 09 Civ. 9814 (JSR) (GWG), 2010 WL 2605736, at *7 (S.D.N.Y. June 29, 2010) (Gorenstein, Mag. J.) ("the allocution by itself is sufficient to find that [petitioner] understood that there was no guarantee that he would receive a sentence of 11-1/2 years or less--regardless of what counsel had allegedly 'promised' him beforehand").

Accordingly, there is no need to further develop the record on petitioner's "four to five years" argument, which even if entirely accepted fails to demonstrate that petitioner's waiver of his right to challenge his sentence was unknowing.

*          *          *

Because petitioner has failed to demonstrate that his guilty plea and waiver were unknowing or that another exception applies to excuse him from his agreement to not collaterally attack his sentence, his remaining claims are barred and his collateral attack ends here.[12]

## IV. Conclusion

For the reasons stated above, the petition is denied. Because petitioner has not made a substantial showing of the

---

[12] Nonetheless, we find that petitioner's remaining claims are wholly without merit. As the Government correctly argues, Count Three of the superseding information is not multiplicitous of either Count One or Count Two for the simple reason that the offense charged in each of those counts requires an element lacking from aggravated identity theft under 18 U.S.C. § 1028A. See Opp'n 17 n. 2. Further, the PSR details more than ample evidence from which we were entitled to determine that it was more likely than not that petitioner was a manager and supervisor pursuant to U.S.S.G. § 3B1.1(b) and that the loss amount was more than $2,500,000 but not more than $7,000,000 pursuant to U.S.S.G. § 2B1.1(b)(1)(J).

denial of a constitutional right, a certificate of appealability will not issue.  See 28 U.S.C. § 2253(c).  Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

Dated:    New York, New York
          April 16, 2012

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on
this date to the following:

Petitioner:
Foriduzzaman Sarder
Reg. No. 62740-054
FCI Fort Dix
Federal Correctional Institution
P.O. Box 2000
Fort Dix, NJ 08640

Attorneys for the Government:
Ryan P. Poscablo, Esq.
Michael D. Lockard, Esq.
U.S. Attorney's Office
One Saint Andrew's Plaza
New York, NY 10007